TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 96-405 |
| of | : | |
| | : | March 20, 1997 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| ANTHONY S. DA VIGO | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE HONORABLE RICHARD K. RAINEY, MEMBER OF THE CALIFORNIA STATE SENATE, has requested an opinion on the following question:

May public funds be used to repair and maintain an unpaved road located on private property if the general public has a "prescriptive use easement" to travel on the road?

CONCLUSION

Public funds may be used to repair and maintain an unpaved road located on private property if the general public has a "prescriptive use easement" to travel on the road.

ANALYSIS

We are advised that an unpaved road in Sierra County between Downieville and Johnsville crosses over privately owned property. It is depicted on United States Geological Survey and local maps for the area and has been used for travel by members of the public for the past 100 years. Currently 4-wheel drive vehicles, motorcycles, mountain bikes, and hikers travel the road. May public funds be spent to repair and maintain the road even though it is on private property? We conclude that public funds may be so used.

The issue to be resolved is whether the "gift clause" of the Constitution prohibits public funds from being used to maintain a road on private property where members of the general public have only a "prescriptive use easement" with respect to the road. **Footnote No. 1** The constitutional clause in question states in part: "The Legislature shall have no power to . . . authorize the making of any gift, of any public money or thing of value to any individual, municipal or other corporation whatever." (Cal. Const., art. XVI, § 6.)

A "prescriptive use easement" is an interest in private property entitling the holder to a limited use of the property. The owner of the property may not use the property inconsistent with the easement holder's limited use. (Civ. Code, § 1007; *Darr* v. *Lone Star Industries, Inc.* (1979) 94 Cal.App.3d 895, 899-901.) A prescriptive use easement may not be obtained in property owned by the state or public

agencies. (Civ. Code, § 1007; *Hays* v. *Vanek* (1989) 217 Cal.App.3d 271, 286.)

When a "prescriptive use easement" is obtained in private property by members of the general public, it is more properly termed an "implied dedication." (*People* v. *Sayig* (1951) 101 Cal.App.2d 890, 896.) Recently the court in *Hays* v. *Vanek*, *supra*, 217 Cal.App.3d at 281, explained the two ways in which implied dedications are established by the public in a road located on private property:

"A common law dedication of a roadway to the public can be proved in either one of two ways: (1) by showing approval or acquiescence of the owner in the use of the road by members of the public under circumstances inconsistent with use under a license; or (2) by establishing open and continuous use by the public for a prescriptive period. [Citations.] The first method, implied-in-fact dedication, requires a clear and unequivocal offer by the owner to dedicate the road to a public use and an acceptance of the offer by the public. [Citation.] The second method, implied-in-law dedication, shifts the focus of inquiry from the intent of the owner to the activities of the public. [Citation.]"

Thus an "implied-in-law" dedication is based upon the activities of the general public during a "prescriptive period" of time. In *County of Los Angeles* v. *Berk* (1980) 26 Cal.3d 201, 213-214, the Supreme Court summarized:

"As early as 1854 this court, in addressing the matter of common law dedication of property to the public, indicated that such a dedication might occur not only by deed or other action so manifesting dedicatory intention on the part of the owner but by `lapse of time.' [Citation.] In a series of subsequent cases it was made clear that dedication arising out of `lapse of time,' in the words of *Scott*, was to be distinguished from dedication arising from dedicatory acts or conduct by the owner in that it looked not to the intentions of the owner but to the intent and activities of the public on the land in question; here the inquiry became whether the public, through long-continued `adverse' use of the property, has so manifested its public aspect as to justify the implication in law that a dedication had occurred. [Citations.] Our 1954 opinion in *Union Transp. Co.* v. *Sacramento County* (1954) 42 Cal.2d 235, which drew upon all of these as well as other cases, identified this form of dedication as one implied in law, as opposed to those forms resting upon the acts or acquiescence of the owner, which it characterized as implied in fact. [Citation.]

"Our *Gion-Dietz* [*Gion* v. *City of Santa Cruz* (1970) 2 Cal.3d 29] case, adverting to this venerable line of authority, went on to distinguish the character of `adversity' necessary to implied in law dedication to the public from that obtaining in the law of private prescriptive rights, pointing out that what must be shown here is not a personal claim of right but rather a use by members of the public `believing the public has a right to such use.' [Citation.] Here again we did not purport to announce `new law' but rather to consolidate and explain prior expressions and holdings. Indeed, as long ago as 1908 it had been explained that in such cases the public was not required `to make proclamation that they are using [the subject property] under a claim of right where the right is asserted as flowing from long usage with the knowledge and acquiescence of the owner of the land; nor is it always necessary to show some aggressively hostile act by the public that such use was intended to be adverse to the owner. The claim of right, the adverse character of the use and the knowledge and acquiescence of the owner of the land may be presumed from the facts and circumstances attending the use.' [Citations.]" (Fns. omitted.)

Whether the general public's "prescriptive use easement" of the road in question was the result of an implied-in-fact dedication or an implied-in-law dedication does not affect our analysis. In either case, members of the public have a right to use the road regardless of the intentions or acts of the current

private property owners. (Civ. Code, § 1007; *Hays* v. *Vanek*, *supra*, 217 Cal.App.3d at 284-287.) **Foontnote No. 2**

Returning to the "gift clause" prohibition of the Constitution, we find that it is not violated where public funds are used to provide a public benefit. In *California Housing Finance Agency* v. *Elliott* (1976) 17 Cal.3d 575, 583, the court stated:

> ". . . Under the public purpose doctrine, public credit may be extended and public funds disbursed if a direct and substantial public purpose is served and non state entities are benefited only as an incident to the public purpose. [Citations.] `. . . [T]he benefit to the state from an expenditure for a public purpose is in the nature of consideration and the funds expended are therefore not a gift even though private persons are benefited therefrom.' [Citation.]"

In *County of Alameda* v. *Janssen* (1940) 16 Cal.2d 276, 281, the court analyzed the "gift clause," then contained in article IV, as follows:

> "It is well settled that, in determining whether an appropriation of public funds or property is to be considered a gift, the primary question is whether the funds are to be used for a `public' or a `private' purpose. If they are for a `public purpose', they are not a gift within the meaning of section 31 of article IV. [Citations.]"

Here the proposed expenditure of public funds to repair and maintain the road in question would serve a public purpose. The funds would be used to improve and benefit a "public" road over which members of the general public have the right to travel. (See *Union Transp. Co.* v. *Sacramento County* (1954) 42 Cal.2d 235, 244; *Hays* v. *Vanek*, *supra*, 217 Cal.App.3d at 280-284; *Brumbaugh* v. *County of Imperial* (1982) 134 Cal.App.3d 556, 563; *Erven* v. *Board of Supervisors* (1975) 53 Cal.App.3d 1004, 1012; 61 Ops.Cal.Atty.Gen. 466, 468 (1978); 47 Ops.Cal.Atty.Gen. 191, 192-194 (1966); 45 Ops.Cal.Atty.Gen. 98, 100 (1965).) To the extent that private property owners would also travel on the road over their properties, they would be benefitted only as an incident to the public purpose.

We conclude that public funds may be used to repair and maintain an unpaved road located on private property if the general public has a "prescriptive use easement" to travel on the road.

* * * * *

**Footnote No. 1**

It is assumed for purposes of the inquiry that such funds would derive from a statutorily authorized source.

**Footnote No. 2**

Under the terms of Civil Code section 1009, the acts of the general public in the use of certain private recreational property after March 4, 1972, may not establish an implied-in-law dedication.